**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 24, 2017**

# In the Court of Appeals of Georgia

A17A1354. CARPENTER v. THE STATE.

RICKMAN, Judge.

William Lawrence Carpenter was tried by a jury and convicted of aggravated assault, criminal attempt to commit kidnaping, and two counts of possession of a firearm during a crime. On appeal, Carpenter contends that the trial court erred by allowing the victim to identify him during the trial or, alternatively, that his counsel was ineffective by failing to object to the identification. Carpenter also challenges the sentence imposed by the trial court. For the following reasons, we affirm in part, vacate in part, and remand this case for resentencing with direction.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only

whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895 (783 SE2d 400) (2016).

So viewed, the evidence showed that on the afternoon of March 29, 2012, the victim was working at a dry cleaning store in Houston County. A male parked in the drive-thru of the store and from outside of a clear glass door, asked the victim how long it would take for a suit to be cleaned. The victim replied and the male indicated that he would need it sooner than the victim believed it would be ready. The victim called another store to see if the suit could be cleaned faster and she relayed the information from the other store to the male. Another customer came into the store and the male told the victim that she could help the other customer while he decided what to do. The victim dealt with the other customer quickly and then observed that the male appeared to be on the phone so she did some other tasks around the store.

At some point, the victim turned around and observed that the male was standing inside the store with a gun. The male ordered the victim to "get in the car; get in the car; get in the car." The victim refused but told the male to "take the

money." The male told the victim that he did not want any money, he wanted her to "just get in the car." The victim explained to the male that because he had on sunglasses and a hat she would not be able to identify him and he should just leave. The male stopped, turned around, and left the store. As the male left in his car, the victim was able to take a picture of the car with her phone. The photograph depicted a Toyota 4Runner. The numbers on the license plate were too blurry to identify so the photograph was later transmitted to the police department for enhancement.

The victim called 911, an officer responded to the scene, and the victim gave the officer a description of the assailant. The victim told the officer that the assailant was slightly taller than the officer, not big but not "scrawny," had strawberry blonde hair, and wore a hat and glasses.

The victim went to the police station for another interview. While the victim was at the police station, the investigator showed her a photographic line-up. The victim was not 100 percent positive, but she thought the assailant was photograph number two in the line-up. The victim testified at trial that Carpenter's photograph was number two in the line-up.

The customer who entered the store while the victim was talking to the assailant was also shown a photographic line-up. The customer was also not 100

3

percent positive, but believed that the male she saw in the store was photograph number two in the line-up. The customer also testified at trial that Carpenter's photograph was number two in the line-up.

The officer who enhanced the photograph of the assailant's car noticed two, dark in color, squares on the vehicle's back window. The officer was also able to partially identify the license plate number and determined that the name of the county on the tag was four to five letters. A detective who was assisting with the investigation began to run different license plate number combinations through a computer system and the results pointed to a Toyota 4Runner owned by Carpenter.

The detective assigned to the case retrieved a copy of Carpenter's driver's license. Carpenter's license photograph was consistent with the physical description given by the victim of the male perpetrator.

The detective drove to Carpenter's address in Bibb County. Neither Carpenter nor his vehicle were at the location; however, at some point later, the detective and Carpenter spoke on the telephone. Carpenter told the detective that he had been playing golf, denied being near the incident location, and stated that his license plate tag had been stolen.

4

The detective later interviewed Carpenter at the police station and asked for his cellular telephone number. The detective obtained the telephone records for the telephone number provided but discovered that there had not been much activity on the phone which the detective thought was odd, considering that Carpenter worked for a wireless communications company. The detective thereafter called Carpenter's employer, discovered that Carpenter had another cellular telephone, and obtained the records for Carpenter's other cellular telephone. Those records revealed that approximately 20 minutes before the incident at the dry cleaning store, a call from Carpenter's phone started and ended from a cellular tower in Houston County, less than three miles from the store.

Carpenter's vehicle was searched pursuant to a search warrant. There were two decals on the back window of the vehicle. The decals clearly had lines from adhesive on them. Inside the vehicle, two black placards and a roll of double sided tape were recovered. The placards appeared to match up with the decals.

The grand jury returned an indictment charging Carpenter with aggravated assault, criminal attempt to commit kidnaping, and two counts of a possession of a firearm during a crime. He was convicted of all of the charges. Carpenter timely filed a motion for new trial, which was denied. This appeal follows.

1. Carpenter contends that the trial court erred by allowing the victim to identify him during the trial. Because the victim only identified Carpenter as being the person whose photograph she tentatively selected in the line-up, and did not identify Carpenter as the perpetrator of the crime, his argument is difficult to discern.[1]

During the trial, after the victim explained that she tentatively identified the second photograph in the line-up as the male who came in the store the date of the incident, but was not 100 percent sure, she was asked if the person whose photograph was in the number two position was in the courtroom. The victim responded that number two in the line-up was Carpenter. In addition to the victim's testimony, the customer, the detective, and Carpenter himself testified that Carpenter's photograph was number two in the line-up. Accordingly, because it was undisputed that Carpenter's photograph was depicted in the number two position in the line-up, this argument is without merit.

2. Carpenter contends that his trial counsel rendered ineffective assistance of counsel. Specifically, Carpenter argues that his trial counsel was ineffective for failing to object to the victim's in-court identification of him.

---

[1] Carpenter is not challenging the admission of the line-up.

6

To prevail on an ineffective assistance of counsel claim, Carpenter must prove both that his trial counsel's performance was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo." *Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003).

Carpenter cannot prove that his trial counsel's performance was deficient. For the reasons set forth in Division 1, an objection to the victim identifying Carpenter as the person whose photograph was number two in the line-up would have been meritless. "A trial attorney's failure to make a meritless or futile motion does not provide a basis for finding that the defendant received ineffective assistance of counsel." (Citation and punctuation omitted.) *Winfrey v. State*, 286 Ga. App. 718, 724 (6) (a) (650 SE2d 262) (2007). See generally *Wesley v. State*, 286 Ga. 355, 356 (3) (a), (b), and (e) (689 SE2d 280) (2010).

3. Carpenter contends that his conviction for aggravated assault must be merged with his conviction for criminal attempt to commit kidnaping and that his two

convictions for possession of a firearm during the commission of a crime should merge.

"When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if . . . [o]ne crime is included in the other . . ." OCGA § 16-1-7 (a) (1). In *Drinkard v. Walker*, 281 Ga. 211, 216 (636 SE2d 530) (2006), our Supreme Court adopted the "required evidence" test to determine whether one crime is "included in" another crime. Under the "required evidence" test,

> the important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

(Footnote omitted.) Id. at 216.

Here, to prove the aggravated assault charge as indicted, the State was required to show that Carpenter used a deadly weapon to place the victim in reasonable apprehension of receiving a violent injury. See OCGA §§ 16-5-20 (a) (2), 16-5-21 (a) (2). To prove the attempted kidnaping charge, the State was required to show that Carpenter took a substantial step towards abducting the victim without lawful

8

authority and holding her against her will. See OCGA §§ 16-4-1, 16-5-40 (a). "Because each of these crimes was established by proof of an additional fact not at issue in the other crime, they do not merge. (Punctuation and footnote omitted.) *Middlebrooks v. State*, 289 Ga. App. 91, 93 (1) (656 SE2d 224) (2008); see *Drinkard*, 281 Ga. at 217.

However, Carpenter's convictions for possession of a firearm during the commission of a crime (criminal attempt to commit kidnaping) and possession of a firearm during the commission of a crime (aggravated assault) should have been merged. "[W[here multiple crimes are committed together during the course of one continuous crime spree, a defendant may only be convicted once for possession of a firearm during the commission of a crime as to each individual victim." (Citation and punctuation omitted.) *Abdullah v. State*, 284 Ga. 399, 401 (4) (667 SE2d 584) (2008). Accordingly, this case is remanded for resentencing. See id.; see also *Williams v. State*, 277 Ga. 368, 369 (2) (589 SE2d 563) (2003).

*Judgment affirmed in part and vacated in part; case remanded. Ellington, P. J., and Andrews, J., concur.*